UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

HENDERSON GUEVERA AREVALO,

        Petitioner,                    Case No. 1:25-cv-1365

v.                                       Honorable Robert J. Jonker

ROBERT LYNCH et al.,

        Respondents.
_____/

# **OPINION**

Petitioner Henderson Guevera Arevalo initiated this action on November 4, 2025, by filing a counseled petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) Petitioner is presently detained by the United States Immigration and Customs Enforcement (ICE) at the North Lake Processing Center (North Lake) in Baldwin, Lake County, Michigan.

Petitioner challenges the lawfulness of his current detention and asks the Court for the following relief: accept jurisdiction over this action; issue a writ of habeas corpus requiring Respondents to release Petitioner or, alternatively, provide Petitioner with a bond hearing within three (3) days; and award attorneys' fees and costs for this action. (*Id.*, PageID.11–12.)[1] For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

---

[1] In an order entered on November 5, 2025, the Court directed Respondents to show cause, within 21 days, why the writ of habeas corpus requested by Petitioner should not be granted. (Order, ECF No. 3.) Respondents filed their response on November 25, 2025. (ECF No. 6.) On December 5, 2025, in lieu of a reply, Petitioner filed an amended petition that clarifies the nature of Petitioner's parole. (ECF No. 7.) In Petitioner's initial petition, he requested oral argument. (*See* Pet., ECF No. 1, PageID.1.) The Court concludes that the parties' briefs sufficiently address the relevant issues and oral argument is unnecessary.

### Discussion

I.  **Factual Background**

Petitioner is a native and citizen of Venezuela. (De Leon Decl. ¶ 4, ECF No. 6-1, PageID.65.) On June 30, 2023, Petitioner applied for admission at the United States port of entry in Laredo, Texas, "without possessing valid immigration documents to enter the United States." (*Id.*) Petitioner indicates that he did so after "schedule[ing] an appointment to cross the border through the CBP-1 app so he could apply for asylum, as was required by regulations at the time." (Am. Pet., ECF No. 7, PageID.81.) Petitioner "presented himself at a port of entry pursuant to his appointment and was detained and inspected by immigration officers." (*Id.*)

On that date, United States Customs and Border Protection (CBP) agents encountered Petitioner at the port of entry and issued Petitioner a Form I-862, Notice to Appear (NTA), charging Petitioner with inadmissibility pursuant to § 212(a)(7)(a)(i)(I) of the Immigration and Nationality Act (INA) because Petitioner did not have valid immigration documents. (De Leon Decl. ¶ 5, ECF No. 6-1, PageID.65–66.) CBP agents determined that Petitioner "was not clearly and beyond doubt entitled to admission." (*Id.* ¶ 6, PageID.66.) "Record checks established that [Petitioner] was a native and citizen of Venezuela who did not adjust status or receive citizenship in the United States." (*Id.*) This information was documented in a Form I-213, Record of Deportable/Inadmissible Alien. (*Id.*)

A copy of the NTA was filed with the San Antonio Immigration Court to commence removal proceedings. (*Id.* ¶ 5.) At that time, a master calendar hearing was scheduled for February 23, 2026. (*Id.*) CBP "released [Petitioner] from custody pursuant to a grant of parole to allow him to attend his removal proceedings." (*Id.*) Petitioner indicates that he was granted parole pursuant to 8 U.S.C. § 1182(d)(5) after agents found it "was in the public interest and/or for a humanitarian benefit." (Am. Pet., ECF No. 7, PageID.81.)

2

On September 13, 2025, ICE agents encountered and arrested Petitioner in Chicago, Illinois. (De Leon Decl. ¶ 7, ECF No. 6-1, PageID.66.) ICE detained Petitioner pursuant to § 235 of the INA as "an applicant for admission to the United States seeking admission and he is not clearly and beyond doubt entitled to admission." (*Id.*, PageID.66–67.) ICE served Petitioner with a Form I-200, Warrant for Arrest of Alien, on that date. (*Id.*, PageID.67.) Petitioner was transferred to North Lake on September 16, 2025. (*Id.* ¶ 8.)

Petitioner "is currently in removal proceedings on the detained docket before the Detroit Immigration Court." (*Id.* ¶ 9.) Petitioner's master calendar hearing is scheduled for January 8, 2026. (*Id.*) Petitioner has not requested a bond hearing. (*Id.*)

## II.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## III.    Exhaustion

Respondents argue that the Court should deny Petitioner's request for habeas corpus relief because Petitioner has not exhausted his administrative remedies. (Resp., ECF No. 6, PageID.47.)

Here, no applicable statute or rule mandates administrative exhaustion by Petitioner. Thus, whether to require exhaustion is within this Court's "sound judicial discretion." *See Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). "Courts have described an implied requirement to raise issues with an agency as a 'judge-

3

made,' 'prudential,' or 'common law' duty to exhaust," *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019) (citations omitted), and such a court-made exhaustion rule must comply with statutory schemes and Congressional intent, *Shearson*, 725 F.3d at 593–94. Notably, the United States Court of Appeals for the Sixth Circuit has not yet decided "whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention," *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sep. 9, 2025) (citing *Hernandez Torrealba v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025)), and "[t]he Sixth Circuit has not formally adopted a standard for determining when prudential exhaustion applies." *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). However, courts within the Sixth Circuit "have applied the three-factor test, set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (derived from *McGee v. United States*, 402 U.S. 479, 484[ (1971)]; *McKart v. United States*, 395 U.S. 185, 193–95[ (1969)),]" to determine whether prudential exhaustion should be required. *Id.* Under this three-factor test,

> Courts may require prudential exhaustion when:
>
> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015)).

Upon consideration of these factors, this Court concludes that prudential exhaustion should not be required in Petitioner's case. Here, Petitioner's § 2241 petition presents principally legal

4

questions of statutory interpretation, which do not require the record that would be developed if the Court required Petitioner to exhaust his administrative remedies. Moreover, this Court is not bound by, and is not required to give deference to, any agency interpretation of a statute. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) (discussing that "courts need not and under the [Administrative Procedure Act (APA)] may not defer to an agency interpretation of the law simply because a statute is ambiguous").

Second, Petitioner's constitutional challenge to his detention does not require exhaustion. The Sixth Circuit has noted that due process challenges generally do not require exhaustion because the Board of Immigration Appeals (BIA) cannot review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) (discussing that "an alien's due process challenge generally does not require exhaustion," but noting that an "alien must raise correctable procedural errors," such as a claim "that the BIA denied him due process by relying upon an 'incomplete and inaccurate' transcript to review his case," "to the BIA"). Finally, it is doubtful that BIA review of Petitioner's custody would preclude the need for judicial review. The Court reaches that conclusion based upon the fact that the Government has clearly set forth its belief that all noncitizens are subject to mandatory detention during removal proceedings. And, recently the BIA proclaimed that all noncitizens are subject to mandatory detention under § 1225(b)(2)(A). *See Matter of Yajure Hurtado*, 29 I&N Dec. 216, 229 (BIA 2025). It is simply unlikely that any administrative review by the BIA would lead the Government to change its position, and thereby obviate the need for judicial review of Petitioner's § 2241 petition. Accordingly, for the foregoing reasons, this Court concludes that prudential exhaustion is not required.

Alternatively, even in situations where a court may ordinarily apply prudential exhaustion, the court may still choose to waive exhaustion. *See Lopez-Campos*, 2025 WL 2496379, at *4

(citations omitted). A court may choose to rule upon the merits of the issues presented when the "legal question is 'fit' for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted). A court may also waive exhaustion if the "pursuit of administrative remedies would be a futile gesture." *Shearson*, 725 F.3d at 594 (citation omitted).

Here, given the Government's position and the BIA's recent decision in *Yajure Hurtado*, requiring Petitioner to exhaust his administrative remedies would likely be futile. Moreover, it is clear that delay would result in hardship to Petitioner. It is "unmistakable that . . . depriving [Petitioner] of his liberty while awaiting a BIA appeal decision certainly equates to hardship. And any delay results in the very harm [Petitioner] is trying to avoid . . . – detention." *See Lopez-Campos*, 2025 WL 2496379, at *5.

In sum, the Court declines to enforce the doctrine of prudential exhaustion against Petitioner. Moreover, even if the Court were to conclude that exhaustion is warranted, the Court concludes in the alternative that waiver of exhaustion is appropriate. Accordingly, the Court will proceed to address the merits of Petitioner's § 2241 petition.

**IV.     Merits Discussion**

    **A.     Statutory and Regulatory Basis for Petitioner's Parole and Recent Detention**

Here, Petitioner entered the United States at a port of entry and was subsequently paroled into the United States under 8 U.S.C. § 1182(d)(5)(A). (Am. Pet., ECF No. 7, PageID.81.)

The INA "establishes the framework governing noncitizens' entry into and removal from the United States, with regulations promulgated by the enforcing agencies providing further governance." *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1132 (D. Or. 2025). "Noncitizens who arrive at a port of entry without a visa or other entry document, like Petitioner, are deemed 'inadmissible' under 8 U.S.C. § 1182(a)(7)" due to their lack of entry documents. *Id.* at 1132 & n.7

(noting that "[d]epending on the circumstances, other categories of inadmissibility may also apply, but § 1182(a)(7) applies for noncitizens without proper documentation"). Once a noncitizen is deemed inadmissible, "the immigration officer must order the noncitizen's removal unless the noncitizen indicates an intention to apply for asylum or fear of prosecution." *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i)). The government may place the noncitizen into expedited removal proceedings, *see* 8 U.S.C. § 1225(b)(1), or the government may place the noncitizen into regular removal proceedings under 8 U.S.C. § 1229(a). *See Y-Z-L-H*, 792 F. Supp. 3d at 1132–33 (citing 8 U.S.C. § 1225(b)(2)).

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). However, "applicants for admission may be temporarily released on parole [into the United States] 'for urgent humanitarian reasons or significant public benefit,'" as set forth in 8 U.S.C. § 1182(d)(5)(A). *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A)). The decision to grant parole pursuant to 8 U.S.C. § 1182(d)(5)(A) is determined "on a case-by-case basis." 8 U.S.C. § 1182(d)(5)(A). Then, "when the purpose of the parole has been served," § 1182(d)(5)(A) provides that "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

To terminate the previously granted parole, the agency must comply with the applicable regulatory and statutory requirements. As set forth in 8 C.F.R. § 212.5(e)(2)(i), which governs the "[t]ermination of parole,"

> In cases not covered by paragraph (e)(1) of this section,[2] upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.

8 C.F.R. § 212.5(e)(2)(i). That is, "[u]nder the governing regulation, [§ 1182(d)(5)(A)] parole may be terminated only if the purpose of parole is accomplished, or humanitarian reasons and the public benefit no longer warrant parole." *Loaiza Arias v. LaRose*, No. 3:25-cv-02595-BTM-MMP, 2025 WL 3295385, at *3 (S.D. Cal. Nov. 25, 2025) (citing 8 C.F.R. § 212.5(e)). As explained below, the Court concludes that Respondents have failed to follow the applicable statutory and regulatory provisions to terminate Petitioner's parole. *Cf. Coal. for Humane Immigrant Rts. v. Noem*, No. 25-cv-872 (JMC), 2025 WL 2192986, at *2 (D.D.C. Aug. 1, 2025) (holding that the government failed to follow the applicable statutory and regulatory provisions and that paroled noncitizens cannot be subject to expedited removal proceedings); *Salgado Bustos v. Raycraft*, No. 25-13202, 2025 WL 3022294, at *5–7 (E.D. Mich. Oct. 29, 2025) (same); *E.V. v. Raycraft*, No. 4:25-cv-2069, 2025 WL 2938594, at *10 (N.D. Ohio Oct. 16, 2025) (same).

First, based on the information before the Court, it does not appear that the purpose of Petitioner's parole has been accomplished. Petitioner fled from Venezuela and presented himself at a port of entry so that he could apply for asylum. (Am. Pet., ECF No. 7, PageID.81.) At that

---

[2] Paragraph (e)(1) provides for the automatic termination of parole without written notice where the noncitizen has either departed from the United States or at the expiration of time for which the parole was authorized. The parties have not suggested that either circumstance applies here.

8

time, Petitioner was granted parole pursuant to 8 U.S.C. § 1182(d)(5)(A), which provides for parole into the United States "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); (*see* Am. Pet., ECF No. 7, PageID.81.) Moreover, there is nothing before the Court to suggest that the humanitarian reason or public benefit that justified Petitioner's parole no longer applies.

Further, district courts that have addressed the termination of § 1182(d)(5)(A) parole "have found that just as a grant of parole requires an individualized review, revocation of parole requires a case-by-case assessment to comply with the statute," and the Court finds the reasoning in these non-binding cases to be persuasive. *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025) (citations omitted) (addressing this issue, and granting the petitioner's motion for preliminary injunction and ordering that the petitioner be released); *see, e.g.*, *Y-Z-L-H*, 792 F. Supp. 3d at 1137–47 (addressing this issue, and granting the petitioner's habeas petition and ordering that the petitioner be released from custody); *Loaiza Arias*, 2025 WL 3295385, at *2–4 (same); *Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10–13 (S.D. Cal. Oct. 1, 2025) (same); *Munoz Materano v. Arteta*, No. 25 CIV. 6137 (ER), --- F. Supp. 3d ----, 2025 WL 2630826, at *14–17 (S.D.N.Y. Sept. 12, 2025) (same); *Gabriel B.M. v. Bondi*, No. 25-cv-4298 (KMM/EMB), 2025 WL 3443584, at *6–7 (D. Minn. Dec. 1, 2025) (addressing this issue, and granting the petitioner's request for a preliminary injunction and ordering the petitioner's release from custody); *Orellana v. Francis*, No. 25-cv-04212 (OEM), 2025 WL 2822640, at *2–3 (E.D.N.Y. Oct. 3, 2025) (addressing the issue in the context of a motion for reconsideration filed by the respondents, and affirming the court's grant of habeas relief to the petitioner and the court's order to release the petitioner). *But see Doe v. Noem*, 152 F.4th 272, 278–79, 285 (1st Cir. 2025) (reversing district court's grant of preliminary relief and vacating district court's stay of the

termination notice for previously granted parole because "Plaintiffs ha[d] not demonstrated a strong likelihood of success in showing that under the statute, the Secretary must terminate these grants of parole under the [parole] program[s] on an individual basis").[3] Here, there is no indication

---

[3] *Doe v. Noem*, 152 F.4th 272 (1st Cir. 2025), is distinguishable from the present case. As the United States District Court for the District of Minnesota recently explained in *Gabriel B.M. v. Bondi*, a case that is similar to the present action:

> First, unlike here, the government in *Doe* did make a determination that the purpose of the plaintiffs' parole had been accomplished. The plaintiffs, non-citizens who entered into the United States through the Cuba, Haiti, Nicaragua, and Venezuela ("CHNV") parole program, lost parole status when the government, via a lengthy and thorough notice published in the Federal Register, decided to terminate the CHNV program altogether, determining that the program no longer served its implementing purpose. In contrast, for Petitioner's revocation, there is no evidence to suggest that such a determination or other finding was made *at all*, and the evidence in the record strongly suggests it wasn't.
>
> Second, the *Doe* court did not address the regulatory requirements established by 8 C.F.R. § 212.5(e)(2)(i), which implement the parole statute and illuminate the procedural requirements for termination of parole. . . . Part 212.5(e)(2)(i) not only restates the revocation authority enumerated in § 1182(d)(5)(A), but also clarifies the (admittedly minimal) procedures the Respondents must follow when invoking the parole statute's revocation authority. The Respondents' failure to follow the governing regulation is equally unlawful. . . .
>
> Finally, and perhaps most importantly, the *Doe* court's interpretation of § 1182(d)(5)(A) reads the bulk of the revocation clause out of the statute. That interpretation rests entirely on the fact that the revocation clause does not include the same "case-by-case" language. But such a myopic focus on that omission elides a significant portion of the text of the revocation clause. The revocation clause in the parole statute gives the Secretary of Homeland Security the authority to revoke parole "when the purposes of such parole shall, in the opinion of the Secretary . . ., have been served." If Respondents were not required to make such a determination to effect termination of parole, then there would be no reason for this language to have been included in the statute. This contradicts "one of the most basic interpretive canons, that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up). Instead, because the parole statute (and its implementing regulation) require such a preconditional determination to be made, the Court enforces it here.

*Gabriel B.M. v. Bondi*, No. 25-cv-4298 (KMM/EMB), 2025 WL 3443584, at *7 (D. Minn. Dec. 1, 2025). *Doe v. Noem* is distinguishable from the present action for these same reasons.

10

in the record before the Court that any such case-by-case determination regarding the revocation of Petitioner's parole was made. Instead, Petitioner indicates that "[h]e was not given notice of his parole revocation prior to his re-detention." (Am. Pet., ECF No. 7, PageID.81.)

In summary, as explained above, based on the information that is presently before the Court, there is no indication that Respondents followed the applicable statutory and regulatory requirements to revoke Petitioner's parole. If Respondents did not follow the applicable statutory and regulatory requirements to properly revoke Petitioner's previously granted parole, then they did not have the authority to arrest and detain Petitioner, "unless there [wa]s some other valid reason to arrest him." *Mata Velasquez*, 794 F. Supp. 3d at 145; *cf. Norfolk S. Ry. Co. v. U.S. Dep't of Lab.*, No. 21-3369, 2022 WL 17369438, at *6 (6th Cir. Dec. 2, 2022) (discussing that "an agency's action that fails to observe the procedures required by its own regulations should be set aside" (citation omitted)); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) ("It is an elemental principle of administrative law that agencies are bound to follow their own regulations[,] . . . [and] '[a]n agency's failure to follow its own regulations tends to cause unjust discrimination and deny adequate notice and consequently may result in a violation of an individual's constitutional right to due process.'" (additional internal quotation marks omitted) (quoting *Sameena, Inc. v. U.S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998))). Respondents do not claim that they had any reason to arrest and detain Petitioner other than his status as a noncitizen. Indeed, Respondents argue that *any noncitizen*, regardless of whether he or she is already present and residing in the United States, is "an alien seeking admission" subject to mandatory detention under § 1225. This Court and other courts throughout the country have rejected this argument. *Cf., e.g.*, *Salgado Mendoza v. Noem*, No. 1:25-cv-1252, 2025 WL 3077589, at *6 (W.D. Mich. Nov. 4, 2025); *Ruiz Mejia v. Noem*, No. 1:25-cv-1227, 2025 WL 3041827, at

\*5–6 (W.D. Mich. Oct. 31, 2025); *De Jesus Ramirez v. Noem*, No. 1:25-cv-1261, 2025 WL 3039266, at \*5 (W.D. Mich. Oct. 31, 2025); *Escobar-Ruiz v. Raycraft*, No. 1:25-cv-1232, 2025 WL 3039255, at \*5 (W.D. Mich. Oct. 31, 2025); *Marin Garcia v. Noem*, No. 1:25-cv-1271, 2025 WL 3017200, at \*5 (W.D. Mich. Oct. 29, 2025); *Cervantes Rodriguez v. Noem*, No. 1:25-cv-1196, 2025 WL 3022212, at \*6 (W.D. Mich. Oct. 29, 2025); *Puerto-Hernandez v. Lynch*, No. 1:25-cv-1097, 2025 WL 3012033, at \*9 (W.D. Mich. Oct. 28, 2025); *Rodriguez Carmona v. Noem*, No. 1:25-cv-1131, 2025 WL 2992222, at \*6 (W.D. Mich. Oct. 24, 2025).

Accordingly, for the reasons set forth above, the Court concludes that Respondents failed to follow the applicable statutory and regulatory requirements to revoke Petitioner's § 1182(d)(5)(A) parole.

**B.     Fifth Amendment Due Process Considerations**

Petitioner also argues that his detention violates the Fifth Amendment's Due Process Clause. (*See* Pet., ECF No. 1, PageID.10–11.) Respondents counter Petitioner's arguments by stating that Petitioner has received due process because "Petitioner has received notice of the charges against him, has access to counsel, is scheduled to attend hearings with an immigration judge, may request bond, has the right to appeal the denial of any request for bond, and has been detained by ICE for just over two months." (Resp., ECF No. 6, PageID.60.)

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted). The Fifth Amendment's Due Process Clause extends to all persons, regardless of status. *See A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025). Thus, noncitizens, such as Petitioner, are entitled to its protections. *See id.*; *see also Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 246837, at \*3 (6th Cir. Jan. 18. 2023).

The Sixth Circuit held that the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), regarding the adequacy of process, applies in the context of immigration detention. *See, e.g.*, *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852–56 (6th Cir. 2020) ("If this court has previously addressed the due-process claim, then we are bound by precedent; if the claim is an issue of first impression, then we generally apply the three-factor test the Supreme Court set out in *Mathews v. Eldridge*."). Under *Mathews*, the Court must consider the following three factors: "(1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail." *See Lopez-Campos*, 2025 WL 2496379, at *9 (citing *Mathews*, 424 U.S. at 335).

The first *Mathews* factor clearly weighs in favor of Petitioner. Here, Petitioner entered the United States at a port of entry, and Respondents granted Petitioner parole into the United States, determining that Petitioner was not a flight risk or danger. Respondents have now detained Petitioner, and there is no dispute that Petitioner has a significant private interest in avoiding detention, as one of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citation omitted). The Court may also consider Petitioner's conditions of confinement, i.e., "whether a detainee is held in conditions indistinguishable from criminal incarceration." *See Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). Here, Petitioner, through counsel, represents that he came to the United States to seek asylum, and that he "has an aunt in Chicago and regularly attends church." (Pet., ECF No. 1, PageID.5.) There can be no doubt that he is "experiencing [many of] the deprivations of incarceration, including loss of contact with friends and family, loss of income

13

earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *See Günaydin*, 784 F. Supp. 3d at 1187.

The second *Mathews* factor also weighs in Petitioner's favor. Clearly, there is a high risk of erroneously depriving Petitioner of his freedom if Petitioner does not receive an individualized determination regarding the revocation of his parole. "To mitigate the risk of erroneous deprivation, due process would require, 'at [a] minimum, the opportunity for [Petitioner] to submit evidence relevant to whether [the government] should revoke [his parole] before [it] make[s] a revocation decision.'" *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 153 (W.D.N.Y. 2025) (citation omitted).

Finally, under the third *Mathews* factor, the Court recognizes that the Government "does, indeed, have a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community." *See Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 WL 2607924, at *12 (D. Mass. Sep. 9, 2025) (citation omitted). However, Respondents have not shown that they have a significant interest in Petitioner's continued detention. Notably, continuing to enforce Petitioner's detention would likely impose more costs upon the Government, as it would be required to continue funding and overseeing Petitioner's detention. *See id.*

In sum, the Court's balancing of the *Mathews* factors weighs in Petitioner's favor. Accordingly, the Court concludes that Petitioner's current detention violates Petitioner's Fifth Amendment due process rights.[4]

---

[4] Because the Court will grant Petitioner's § 2241 petition for the reasons set forth herein, the Court does not, and need not, address other claims raised in Petitioner's § 2241 petition.

## V. Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of all of the other named Respondents. (Resp., ECF No. 6, PageID.61–62.)

"The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 494–95 (1973). Thus,

> [r]ead literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ "within its jurisdiction" requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction.

*Id.* at 495.

The Sixth Circuit has concluded "that a detained alien generally must designate his immediate custodian—the [Immigration and Naturalization Service (INS), the predecessor to the present immigration-related agencies,] District Director for the district where he is being detained—as the respondent to his habeas corpus petition." *Roman v. Ashcroft*, 340 F.3d 314, 322 (6th Cir. 2003). Here, Petitioner has named the Director of the Detroit Field Office of ICE , the United States Secretary of Homeland Security, and the United States Attorney General as Respondents. (Pet., ECF No. 1, PageID.1, 4; Am. Pet., ECF No. 7, PageID.80–81)[5]

---

[5] In his initial petition, Petitioner listed additional respondents in his list of parties to the action (*see* Pet., ECF No. 1, PageID.4–5); however, because these additional respondents are not listed in the case caption of the petition, the Court does not consider them to be named respondents in the action. (*See id.*, PageID.1.)

In *Roman v. Ashcroft*, the Sixth Circuit stated that although it "conclude[d] that the immediate custodian rule generally applies to alien habeas corpus petitioners, . . . [there is] the possibility of exceptions to this rule." *Roman*, 340 F.3d at 322. The *Roman* court explained:

> Some courts are also willing to make an exception to the immediate custodian rule in other extraordinary circumstances. For example, courts have noted the INS's ability, as a practical matter, to deny aliens any meaningful opportunity to seek habeas corpus relief simply by transferring aliens to another district any time they filed a habeas corpus petition. *Chavez–Rivas*[ *v. Olsen*], 194 F. Supp. 2d [368,] 374 [(D.N.J. 2002)]. Aliens remaining in detention for extended periods are often transferred several times during their detention. *See Lee v. Ashcroft*, 216 F. Supp. 2d 51, 55 (E.D.N.Y. 2002) ("[T]he location of custody, and the identity of the day-to-day custodian, frequently change when detainees are transferred among INS facilities, all of which are under the control of the Attorney General."); . . . . In light of these transfers, one court reasoned that an alien may properly name a respondent other than his immediate custodian because a petition naming a higher level official, such as the Attorney General, could be adjudicated without interruption in the event of a transfer. *Arias–Agramonte*[ *v. Comm'r*], [No. 00 CIV. 2412 (RWS),] 2000 WL 1617999, at *8 [(S.D.N.Y. Oct. 30, 2000)] (explaining that a petition naming only one's immediate custodian would be dismissed when the alien was transferred to another local district).

*Id.* at 325–26. Thus, the Sixth Circuit concluded, "an exception might be appropriate if the INS were to exercise its transfer power in a clear effort to evade an alien's habeas petitions." *Id.* at 326.

In light of the foregoing, to ensure that Respondents maintain authority to enforce this Court's grant of habeas relief in the event that Petitioner is transferred out of the Western District of Michigan, the Court will not dismiss Secretary Noem as a Respondent to these proceedings. The Court will, however, dismiss Attorney General Bondi as a Respondent.

## Conclusion

For the reasons discussed above, the Court will enter a judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to release Petitioner from custody, subject to any conditions that existed under Petitioner's § 1182(d)(5)(A) parole. The Court will also order Respondents to file a status report within three days of the issuance of the Court's opinion and judgment to certify compliance with

this opinion and the corresponding judgment. The Court will also dismiss Attorney General Bondi as a Respondent to this action.

Dated:   December 9, 2025                    /s/ Robert J. Jonker
                                             Robert J. Jonker
                                             United States District Judge